**BANCROFT & MASTERS, INC., Plaintiffs,**

**v.**

**AUGUSTA NATIONAL, INC., Defendants.**

**No. C97–4412 TEH.**

United States District Court, N.D. California.

Dec. 24, 1998.

Douglas A. Chaikin, Peninsula IP Group, A Professional Law Corporation, Morgan Hill, for Bancroft & Masters, Inc., a California corporation, plaintiff.

Carla B. Oakley, Brobeck Phleger & Harrison LLP, San Francisco, CA, Larry C. Jones, George M. Taulbee, Leigh A. Morrissey, Alston & Bird LLP, Charlotte, NC, Ronald P. Flynn, Morrison & Foerster LLP, San Francisco, CA, for Augusta National Inc, a Georgia corporation, defendant.

## ORDER

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on defendants' Motion to Dismiss, or in the Alternative, to Transfer, for Lack of Personal Jurisdiction. Having carefully considered the parties' papers and the record herein, the motion is granted for the reasons set forth below.[1]

### BACKGROUND

This action stems from a dispute over the Internet domain name "MASTERS.COM." Plaintiff, Bancroft and Masters, a small California company providing computer and networking support services, has owned and used this domain name since February 8, 1995. Complaint ¶¶ 1, 7.

---

1. In his December 10, 1998 letter to the Court, counsel for plaintiff stated that "we believe that a hearing is not necessary and we are willing to submit the motion as it now stands." The Court agrees that the matter can be determined on the papers before it and thus issues this ruling without holding oral argument.

Defendant, Augusta National, Inc. ("ANI"), operates the Augusta National Golf Club in Georgia which sponsors the annual MASTERS golf tournament. On December 4, 1997, ANI sent a letter to Network Solutions, Inc., which administers domain names, challenging plaintiff's use of the MASTERS.COM domain name, and requesting that it be transferred to ANI. ANI also sent plaintiff a letter detailing ANI's right to the MASTERS registered mark,[2] and demanding that plaintiff cease its use of the MASTERS.COM domain name to prevent further dilution and infringement of ANI's MASTERS mark. Plaintiff responded by filing this action which seeks a declaratory judgment of "non-dilution and non-infringement," and cancellation of defendant's federally registered trademark due to misuse. Presently before the Court is ANI's motion to dismiss this action for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), or in the alternative, to transfer the action to Atlanta, Georgia.

*DISCUSSION*

California law "allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." (*Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484–85 (9th Cir.1993)); *Cornelison v. Chaney*, 16 Cal.3d 143, 147, 127 Cal.Rptr. 352, 545 P.2d 264 (1976); Cal.Code Civ.Proc. § 410.10. Thus, this Court need only analyze whether the exercise of jurisdiction comports with constitutional constraints. Those constraints permit a state to exercise personal jurisdiction only over those defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Core–Vent*, 11 F.3d at 1484. A defendant's activities involving the forum state should be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Omeluk v. Langsten Slip & Batbyggeri AS*, 52 F.3d 267, 270 (9th Cir.1995).

Personal jurisdiction can be either "general" or "specific." "If the defendant's activities within a state are 'substantial' or 'continuous and systematic,'" general jurisdiction may be asserted even if the cause of action is unrelated to those activities. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). If a defendant's activities are not "sufficiently pervasive to justify the exercise of general jurisdiction, a court may nevertheless assert jurisdiction for a cause of action arising out of the defendant's activities within the forum.." *Shute*, 897 F.2d at 381. In either case, the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986). Where, as here, the issue is presented prior to trial and the parties rely on written submissions, the plaintiff need only "present[ ] a prima facie showing of jurisdictional facts." *Omeluk*, 52 F.3d at 268; *Fields*, 796 F.2d at 301.

A.  *General Jurisdiction*

The Ninth Circuit has stated that "the level of contact with the forum state necessary to establish general jurisdiction is quite high." *Shute*, 897 F.2d at 380; *see also Amoco Egypt Oil Co. v. Leonis Navigation Co. Inc.*, 1 F.3d 848, 850, n. 3 (9th Cir.1993) (noting that the Ninth Circuit has "regularly ... declined to find general

---

**2.** ANI owns several federal registrations for the MASTERS mark, including registrations issued in 1977, 1982, and 1987.

jurisdiction even where the contacts were quite extensive"). In *Shute,* the plaintiff filed suit in Washington against Carnival Cruise Lines, a Panamanian corporation with its principal place of business in Miami, Florida. *Shute,* 897 F.2d at 377. The defendant was not registered to do business in Washington, maintained no office or bank accounts in the state, paid no taxes there, and had no exclusive agents in Washington. The Court held that these factors "militate[d] against the exercise of general jurisdiction," even though the defendant did have a variety of contacts with the state, including advertising in local Washington newspapers, providing brochures to travel agents in the state to be distributed to potential customers, holding training seminars for travel agents in the state to teach them how to solicit Carnival sales, and soliciting customers via commission-paid agents and advertisements. *Id.* at 381. *See also Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984) (declining to find general jurisdiction, and stating that "Significantly, the defendants did not establish a regular place of business in Arizona"); *Cubbage v. Merchent,* 744 F.2d 665, 667–68 (9th Cir.1984) (no general jurisdiction over a non-resident doctor despite his having a significant number of patients in the forum state, his use of the forum state's medical insurance system and telephone directory listings to reach the forum, and his solicitation of patients, via these directories and referrals, in the forum state); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir.1984).

■ Here, the indicia usually used to establish general jurisdiction are also lacking. ANI, a Georgia corporation with its principal place of business in Augusta, Georgia, maintains no employees, offices, real property, inventory or personal property in California. It operates the Augusta National Golf Club, the principal activities of which "concern the provision of a golf course located on the Club's premises [in Georgia] and the promotion, sponsorship and provision of the MASTERS golf tournament," which is held annually at the golf course. Armstrong Decl. at ¶ 30–4. It is not registered or licensed to do business in California, and it pays no taxes in California. It also maintains no bank accounts in California, has no formal relationship with any California golf courses, and is owed no debts by any California companies. Nor does it target the California market since it does not disseminate any print, television or radio advertising in California, and does not direct any advertising to California over the Internet. Armstrong Decl. ¶¶ 7–8. While ANI maintains an Internet web site which posts information regarding ANI and the tournament, it can not be used to make purchases. *Id.*

As plaintiff points out, ANI does have some contacts with California. Plaintiff emphasizes, for example, that ANI sells and ships roughly $16,507 worth of golf-related merchandise to California each year and has direct sales of tournament tickets to California residents in an amount averaging $26,257/year.[3] However, these merchandise sales amount to a scant .3% of ANI's total sales, far below the amount of business the defendant in *Shute* conducted in the forum state, *see Shute,* 897 F.2d at 381 (where defendant derived 1.29% and 1.06% of business from forum state), and the ticket sales are not

---

**3.** Plaintiff's "evidence" of these and other contacts discussed in this order are resented by way of conclusory summaries of information purportedly taken from discovery documents. *See* Appendixes A–C, attached to plaintiff's opposition. None of the summaries were supported by timely declarations or the documents themselves. As such, plaintiff failed to present a prima facie case of "jurisdictional facts" on this ground alone. On December 15, 1998, plaintiff filed an untimely declaration from Robin Gross, a law clerk in plaintiff's office, which explains how the summaries contained in Appendixes A–C were compiled. Even assuming, however, that the Court considers the factual information submitted by plaintiff, the Court finds that the exercise of general jurisdiction would not be appropriate for the reasons set in this order.

linked to any advertising directed at California. Nor is the national broadcast of the annual tournament sufficient to confer personal jurisdiction. *See e.g. Zimmerman v. United States Football League*, 637 F.Supp. 46, 48 (D.Minn.1986) (where claim is not related to broadcasts, such broadcasts do not establish sufficient contact to justify exercise of jurisdiction).

ANI also has agreements with California vendors; however, these agreements simply permit the limited use of ANI's logos on golf-related goods manufactured by vendors for sale exclusively in ANI's pro shop in Georgia. Armstrong Reply Decl. ¶ 3. Such purchases from California vendors are insufficient to justify general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). ANI also has license agreements with California companies, however, these agreements only authorize the use of Augusta's logo or tournament film footage for "research, news stories, documentaries or other medial presentations", or the use of the MASTERS logo for shoe horns to be used at Augusta's Georgia club. *Id.* at ¶ 3.[4] Plaintiff also points to phone calls made by ANI to California each month. However, "[m]aking telephone calls and sending telexes and letters [to the forum state] are not activities which support a finding of general jurisdiction." *Gates*, 743 F.2d at 1331. Nor do ANI's occasional business trips to California to attend conferences or educational seminars reflect the type of substantial or continuous and systematic contact needed to confer general jurisdiction.

In short, ANI's contacts with California, either individually or in combination, are not enough to overcome ANI's overall lack of presence in California, and thus do not rise to the level of "substantial" or "continuous and systematic" contacts, as those terms have been applied in personal jurisdiction jurisprudence in this Circuit. *See e.g. Gates*, 743 F.2d at 1331 (defendants contacts must "constitute sufficient activity in [the forum state] to conclude that the defendants 'may in fact be said already to be "present" there' ") (*quoting Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir.1977)); *see also Helicopteros*, 466 U.S. at 411, 418–19, 104 S.Ct. 1868. Accordingly, the Court finds that plaintiff has not met its burden of making a prima facie showing of jurisdictional facts that would warrant the exercise of general jurisdiction over ANI.

### B. *Specific Jurisdiction*

In the Ninth Circuit, the existence of specific jurisdiction is determined by application of a three-pronged test. First, the defendant must do some act or consummate some transaction by which he purposefully avails himself of the privileges of conducting activities in the forum state, thereby invoking the benefits and protection of its laws. Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Core–Vent Corp.*, 11 F.3d at 1485 *Data Disc*, 557 F.2d at 1287; *Douglas Furniture Co. of Cal. v. Wood Dimensions, Inc.*, 963 F.Supp. 899, 901 (C.D.Cal.1997).

Here, plaintiff rests its claim of specific jurisdiction solely on ANI's conduct of sending its December 4, 1997 letter to Network Solutions, Inc., (located in Virginia), challenging plaintiff's use of the MASTERS.COM domain name. Numerous courts have held that a defendant's act of sending a demand or other letter regarding intellectual property rights does not create specific jurisdiction over the defendant, even when such letter is sent directly to the forum state. *See e.g. Douglas*, 963 F.Supp. at 903; *Med–Tec. Inc. v.*

---

4. Another identified license agreement involved a settlement agreement in which ANI allowed an alleged infringer to exhaust its inventory of presumed infringing materials. *Id.* at ¶ 3.

*Kostich,* 980 F.Supp. 1315, 1331 (N.D.Iowa 1997); *Electronic Realty Associates, L.P. v. Paramount Pictures Corp.,* 935 F.Supp. 1172, 1176 (D.Kan.1996); *Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.,* 916 F.Supp. 1049 (W.D.Wash.1994); *KVH Industries, Inc. v. Moore,* 789 F.Supp. 69 (D.R.I.1992). Notably, plaintiff completely ignores this line of cases in its opposition papers. And while these cases generally involved letters that were sent directly to the plaintiff in the forum state, this is no grounds for distinction. Not only was such a letter also sent in this case (from ANI to plaintiff), but plaintiff's reliance on a letter sent to a Virginia company rather than a California company only makes plaintiff's jurisdictional argument weaker, not stronger.

As the *Douglas* and other cases persuasively point out, it "would be unreasonable to require an intellectual property owner to risk having to submit to the jurisdiction of an alleged infringer in order to exercise his rights." *Douglas,* 963 F.Supp. at 903; *KVH Industries,* 789 F.Supp. at 73 ("It would be unfair and unjust to adopt a rule that to uphold her rights, a patent holder must submit to the jurisdiction of [an alleged] wrongdoer's forum"). Such an approach would also discourage any efforts to informally resolve intellectual property disputes. "If any attempt by an intellectual property holder to put an alleged wrongdoer on notice forced the property holder to submit to the jurisdiction of the alleged wrongdoer's forum, an intellectual property owner would be forced to file an action in his own jurisdiction in order to avoid the threat of being haled before a court in another, possibly distant state." *Douglas,* 963 F.Supp. at 903; *see also Med–Tec,* 980 F.Supp. at 1331; *Electronic Realty,* 935 F.Supp. at 1176; *Polaroid Corp. v. Feely,* 889 F.Supp. 21, 27 (D.Mass. 1995); *BIB Mfg. Co. v. Dover Mfg. Co.,* 804 F.Supp. 1129, 1133 (E.D.Mo.1992); *Star-*

*line Optical Corp. v. Caldwell,* 598 F.Supp. 1023, 1027 (D.N.J.1984).

■ Plaintiff's reliance on the "effects doctrine," as applied in *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998), is also misplaced. The effects doctrine is normally applied in tort actions, and permits the plaintiff to satisfy the first "purposeful availment" prong of the specific jurisdiction test by showing (1) intentional actions, (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state. In *Panavision,* the Ninth Circuit applied the effects doctrine in a case in which the plaintiff alleged that the defendant had purposefully "engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision." *Id.* at 1322. No such intentional scheme or tortious conduct is alleged in this action. Accordingly, *Panavision* provides no support for finding "purposeful availment" on the facts of this case.[5]

Moreover, the "effects doctrine" only address the first of the three prongs of the test for specific jurisdiction. As discussed in the cases cited above, plaintiff also can not demonstrate that either of the other two prongs are satisfied. The intellectual property dispute underlying the instant complaint does not "arise out of" ANI's letter to Network Solutions, Inc. *Douglas,* 963 F.Supp. at 902–03; *Electronic Realty,* 935 F.Supp. at 1176. Finally, as explained above, the exercise of jurisdiction would clearly be unreasonable. *Douglas* 963 F.Supp. at 903; *Polaroid Corp.,* 889 F.Supp. at 27. Accordingly, the Court finds that plaintiff has not met its burden of making a prima facie showing of jurisdictional facts that would warrant the exercise of specific jurisdiction over ANI.

---

**5.** The Court notes, however, that *Panavision* also indicates that a Georgia court may not have jurisdiction over plaintiff: "We agree that simply registering someone else's trade-mark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." *Id.* at 1322.

CONCLUSION

For all of the reasons set forth above, the Court grants defendant's motion to dismiss this action without prejudice for lack of personal jurisdiction.

**IT IS SO ORDERED.**